3:07-cr-30090-RM-TSH   # 65   Page 1 of 12

E-FILED
Wednesday, 18 November, 2020  12:19:04 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-30090 |
| ) | |
| ROOSEVELT CRAIG, ) | |
| ) | |
| Defendant. ) | |

OPINION

RICHARD MILLS, United States District Judge:

Pending is Defendant Roosevelt Craig's amended motion for compassionate release.

Pending also is the Defendant's emergency motion to expedite ruling.

I.   BACKGROUND

On December 11, 2018, the Court revoked Defendant Roosevelt Craig's supervised release and sentenced him to a term of 13 months of imprisonment, followed by two years of supervised release. The Defendant admitted that, while he was employed with a moving company, he stole jewelry that was valued at approximately $26,000 from a Rochester, Illinois residence and then sold the jewelry to a local pawn shop in Springfield.

1

The Defendant also pled guilty to felony theft in Sangamon County Circuit Court Case Number 2018-CF-00899, and was sentenced to four years' imprisonment. His 13-month federal term was ordered to run consecutive with his four-year term. He was paroled from the Illinois Department of Corrections on April 7, 2020. His current projected release date from Bureau of Prisons ("BOP") custody is March 6, 2021.

In 2008, United States District Judge Jeanne E. Scott sentenced the Defendant to a term of 150 months imprisonment following his conviction for possession with intent to distribute more than 5 grams of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(B) and (b)(1)(C). In 2015, this Court reduced the Defendant's sentence to 120 months' imprisonment pursuant to a retroactive sentencing guideline amendment. The Defendant's motion notes that his original sentence expired prior to the passage of the First Step Act of 2018, which would have retroactively reduced his statutorily required term of imprisonment. His currently projected release date is March 6, 2021.

The Defendant's motion provides he is a 36-year old black man serving his federal sentence in a local detention facility, Livingston County Jail, in Pontiac, Illinois, due to COVID restrictions on inmate transfer. The Defendant's emergency motion to expedite provides that the Livingston County Jail now has four (4) confirmed positive cases of COVID-19 among inmates. The facility is now on

lockdown. One of the positive cases is a federal detainee who, like the Defendant, is awaiting transport to a BOP facility. The emergency motion reports that federal inmates are often housed together or in the same dorms, especially when in similar procedural postures. The Defendant did work alongside the COVID-positive inmate cleaning the facility and last worked with him on Saturday November 7, 2020, two days before the facility was placed on lockdown. At the time of the emergency motion, the Defendant had not been given a COVID test or been informed that he may have been exposed via contact tracing.

      The Defendant's amended motion reports that he suffers from obesity with a BMI of 36.4, hypertension controlled by diet and exercise, chronic bronchitis, sleep apnea for which he requires a CPAP machine, a history of asthma and he has sickle-cell trait. The Defendant's CPAP machine has been broken since early September and Livingston County officials have attempted, unsuccessfully, to order parts for more than two months.

      The Centers for Disease Control and Prevention ("CDC") has identified hypertension as a chronic health condition that might place him at increased risk should he contract COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited November 10, 2020).

      The CDC states that obesity places individuals at an increased risk of severe illness from the virus that causes COVID-19. www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions (last visited November 10, 2020). The Defendant's amended motion provides that the combination of his remaining health conditions enhances his risk of COVID-19 complications even further. The CDC states that people who are overweight or obese are at higher risk for other chronic conditions such as high blood pressure, diabetes, and high cholesterol. The Defendant claims that his health conditions coupled with circumstances created by the COVID-19 pandemic warrant the exercise of the Court's discretion in considering his release to an early period of home confinement.

The Defendant further notes that federal, state and county prisons and jails are a major source of coronavirus infections. As of November 16, 2020, 34 Illinois Department of Corrections prisoners have died due to COVID—approximately 11 deaths per 10,000 prisoners. www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons. There are no available statistics on virus patterns in local jails. According to the BOP website, 135 inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed November 10, 2020). A majority of the deceased inmates were under the age of 65 and the overwhelming majority of those deceased inmates had pre-existing medical conditions which the CDC lists as risk factors for developing more severe COVID-19 symptoms.

## II. DISCUSSION

(A)

Under the First Step Act signed into law by President Trump on December 21, 2018, defendants are now authorized to file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).

While the Defendant entered federal custody in April 2020, he has not been transferred to a BOP facility due to coronavirus restrictions on inmate movement. While he is technically a BOP inmate, therefore, the Defendant has not been designated to a facility so he cannot file a compassionate release with the Warden. Because the Defendant cannot make such a request and likely will not be designated to a BOP facility with less than four months remaining on his sentence, the Court will excuse the exhaustion requirement in this limited circumstance.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

If extraordinary and compelling circumstances are established, therefore, the Court should then consider the statutory sentencing factors. Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider any applicable post-offense developments under § 3553(a).

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. The policy statement

provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C).

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

7

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). Well over 100 people in BOP custody had died from COVID-19. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The Defendant alleges that contracting the virus could result in serious illness, death or long-term health consequences. The situation at Livingston County Jail is obviously very serious. The Defendant claims that the facility is not following CDC recommended guidelines for containing the spread of COVID-19, as no contact

tracing has been conducted and inmates have not been quarantined who were potentially exposed to other COVID-positive inmates. There have been no efforts to conduct mass testing following the positive inmate cases.

In its response, the Government states that the United States Marshals Service ("USMS") has advised that the Livingston County Jail provides 24-hour medical care to inmates when needed and has employed all necessary COVID-19 protocols for prevention and treatment. Moreover, four inmates tested positive after apparently being exposed to contract janitorial staff. None of the COVID-19 positive inmates were housed in the same unit as the Defendant, and all are currently housed in isolation at the jail.

In further support of the motion, the Defendant states that if he had been transferred to the BOP as scheduled, he likely would have been eligible for release to a halfway house on September 6, 2020—six months prior to his anticipated release date on March 6, 2021. Because he has remained at Livingston, the Defendant is ineligible for BOP's halfway house program. Because he is a high risk individual and who in other circumstances would be elsewhere and in better position to protect himself, the Defendant asks the Court to grant his motion and order him to serve the remaining months of his prison term on home confinement.

The Government states that based on the unique circumstances of this case and given that Defendant is scheduled for release in less than four months, he must

9

serve an additional term of two years of supervised release and the probation office has concluded that the release plan is suitable, it has no objection to the Court granting the Defendant's motion and reducing the sentence to time served. The Government recommends amending the Defendant's supervised release conditions to require that he serve a period of at least six months of home confinement.

Based on the situation at Livingston County Jail and the Defendant's obesity and other health conditions that might place him at an increased risk should he contract COVID-19 and the fact that Defendant is scheduled for release in less than four months, the Court finds that there are extraordinary and compelling circumstances which warrant his release to home confinement. The Court further finds that release to home confinement for the remainder of the Defendant's term is consistent with the statutory sentencing factors. The Court concludes that a term of home confinement until March 6, 2021, the date on which the Defendant would have been released from BOP is sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a).

Ergo, Defendant Roosevelt Craig's Emergency Motion to Expedite Ruling [d/e 61] is GRANTED.

The Defendant's Amended Motion for Compassionate Release [d/e 58] is GRANTED.

The Court hereby reduces the Defendant's term of imprisonment from 13 months to time served.

In order to ensure that Defendant Roosevelt Craig is not a health risk to the public or his family, the Court hereby Directs that the United States Marshals Service require that Defendant be tested for COVID-19 and advise the Court and counsel for the Defendant and the Government of the test result.

If the Defendant tests positive for COVID-19, the Parties may request a stay of the release order pending a negative test and until Defendant has served an appropriate quarantine period.

The Court hereby modifies Defendant's conditions of supervised release to require Defendant serve a term of home confinement until March 6, 2021, with the first 14 days to be spent in isolation, subject to the Northern District of Illinois approving the Defendant's release plan and agreeing to relocation and supervision in this matter. The home confinement shall start as soon as possible after the Defendant's term of supervised release begins. Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same.

The Clerk will terminate the Defendant's *pro se* Motion for Compassionate Release [d/e 56].

The Clerk will send a copy of the Order to the United States Marshals Service and the United States Probation Office.

ENTER: November 18, 2020

    FOR THE COURT:

<u>/s/ <i>Richard Mills</i></u>  
Richard Mills  
United States District Judge